IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ALEX MICHEL,  Plaintiff,  v.  JAMES MCGETTIGAN, et al.,  Defendants. | HON. JEROME B. SIMANDLE  Civil No. 07-2069 (JBS)  **OPINION** |

APPEARANCES:

Mr. Alex Michel
2414 English Creek Avenue
Egg Harbor Township, NJ 08234
    Plaintiff Pro Se

James T. Dugan Esq.
Atlantic County Department of Law
1333 Atlantic Avenue, 8th Floor
Atlantic City, NJ 08401
    Attorney for Defendant James McGettigan

**SIMANDLE**, District Judge:

On April 23, 2007, Plaintiff Alex Michel ("Plaintiff"), then an inmate at the Atlantic County Justice Facility in Mays Landing, New Jersey, was bussed from his detention facility to the New Jersey Superior Court in Atlantic County for an appearance before a state judge. After his appearance, Plaintiff was placed in a temporary holding cell to await his return to the County Justice Facility. While in that holding cell Plaintiff claims that he made repeated attempts to contact officers of the Atlantic County Sheriff's Office ("ACSO") over an intercom to

alert them to his need to use the bathroom and for assistance in this activity.  Plaintiff asserts that his repeated contacts never resulted in any officers coming to his aide and only ever resulted in laughter and ridicule from the officers on the intercom.  Plaintiff claims that he eventually emptied his bowels and soiled himself while waiting for assistance.

Plaintiff brought this suit under 42 U.S.C. § 1983 against Defendant James McGettigan ("Defendant"), Sheriff of Atlantic County,[1] alleging a violation of Plaintiff's rights to due process as a pre-trial detainee under the 14th Amendment of the U.S. Constitution. Defendant has moved for summary judgment [Docket Item 29].  For the reasons explained herein, the Court will grant Defendant's motion in its entirety.

**I. Background**

   **A. Facts**

Plaintiff arrived at the New Jersey Superior Court in Atlantic County on April 23, 2007 at 8:45 a.m. for an appearance before a state judge and was placed in a holding cell.  (Compl. at 8.)  At the time of Plaintiff's appearance in Superior Court, his previous conviction for possession of a controlled dangerous

---

[1] Plaintiff also named Jeffrey S. Blitz, Atlantic County Prosecutor, as a Defendant on the same basis.  However, this Court granted Mr. Blitz's Motion to Dismiss [Docket Item 20] on October 30, 2007 [Docket Item 22].  Sheriff McGettigan is the sole remaining Defendant in this case.

substance had been reversed by the New Jersey Superior Court, Appellate Division and remanded to the Law Division for a new trial.  State v. Michel, 2006 WL 3040326 (N.J. Super. Ct. App. Div. Oct. 27, 2006).  At all times relevant to this case Plaintiff was handcuffed and shackled. (Compl. at 8.)  Plaintiff appeared before the Superior Court judge at approximately 9:00 a.m. (Pl.'s Dep. at 28.)  At around 9:30 a.m., Plaintiff's appearance before the judge ended and he was returned to the same holding cell to await transport back to the Atlantic County Justice Facility.  (Id. at 29.)  The temporary cell was equipped with a toilet but had no toilet paper available for use.  (Compl. at 8.)

About five to ten minutes after Plaintiff returned to the cell, he attempted to contact an officer from the ACSO over an intercom in the cell to request assistance in going to the bathroom.  (Pl.'s Dep. at 30.)  Plaintiff claims that as a result of his handcuffs and the lack of toilet paper he was unable to go to the bathroom of his own accord.  (Compl. at 8-9.)  He further claims that the person to whom he spoke over the intercom was, in fact, an officer with the ACSO.  (Id. at 9.)  No one arrived to assist Plaintiff as a result of this call.  (Id.)

Plaintiff used the intercom again about fifteen minutes later in an attempt to procure some assistance in using the toilet.  (Id.)  Again no help arrived as a result of this call.

(Id.)  Plaintiff then called on the intercom again about forty-five minutes later, making the same request. (Id.)  At approximately 11:30 am, Plaintiff claims that he defecated on himself as a result of his inability to use the toilet and his repeatedly ignored entreaties for assistance through the intercom.  (Id.)

Plaintiff claims that he called out to various officers on the outside of the cell when his calls on the intercom elicited no response.  (Id.).  He also asserts that he spoke to Officer Larry Breder of the ACSO about the incident.  (Id.)  Upon returning to the Atlantic County Justice Facility, Plaintiff reported the incident to the nurse on duty but received no medical treatment.  (Id.)  Plaintiff in his deposition admitted that he had never met Sheriff James McGettigan and that the Sheriff had no personal involvement in the wrongdoing that Plaintiff alleges.  (Pl.'s Dep. at 26-27.)

Plaintiff filed his Complaint in this case on May 3, 2007 while he was still incarcerated at the Atlantic County Justice Facility in Mays Landing, New Jersey. (Compl. at 7.)

**II. Discussion**

   **A.   Standard of Review**

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

Although entitled to the benefit of all justifiable inferences from the evidence, "the nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth 'specific facts showing that there is a genuine issue for trial,' else summary judgment, 'if appropriate,' will be entered." United States v. Premises Known as 717 South Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e)) (citations omitted). As the Supreme Court has explained,

> Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (internal quotations and citations omitted).

**B. Plaintiff's Grounds for Liability against Defendant**

The Plaintiff in the current case alleges that Defendant James McGettigan violated his rights to due process as a pre-trial detainee under the 14th Amendment of the U.S. Constitution. (Compl. at 3.) However, Plaintiff does not allege any direct involvement of Defendant in the actions of the officers who violated Plaintiff's rights. (Id.) Instead, he argues that Defendant employed the officers who violated his rights and is therefore liable under a theory of respondeat superior. (Id.)

Under 42 U.S.C. § 1983, no liability may arise by a theory of respondeat superior. City of Oklahoma City v. Tuttle 471 U.S. 808, 824 n.8 (1985). The Third Circuit has explained this standard by requiring that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs[.]" Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). The court went on to note that, "[p]ersonal involvement can be shown through allegations of personal direction or of actual knowledge

6

and acquiesence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." Id.; accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Additionally a plaintiff may sue a person under Section 1983 in his or her official capacity and thus sue the entity of which the officer is an agent.  Monell v. New York City Department of Social Services, 436 U.S. 658, 690 n.55 (1978).  Such a suit requires that the entity itself be "a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law."  Kentucky v. Graham, 473 U.S. 159, 166 (1985).  The Third Circuit has established three situations in which a government employee may be deemed to have acted according to a policy or custom:

> The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy."  The second occurs where "no rule has been announced as policy but federal law has been violated by the policymaker itself."  Finally, a policy or custom may also exist where "the policymaker has failed to act at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'"

Natale v. Camden County Correctional Facility, 318 F.3d 575, 584

(3d Cir. 2003).

In determining this motion for summary judgment, the Court must take as true all of the evidence presented by Plaintiff and make all inferences in favor of the position of Plaintiff. In this case the question of whether the alleged misconduct at issue here amounts to a constitutional violation is in doubt.

The Supreme Court has required that for a condition of confinement to rise to the level of a due process violation that condition must be "imposed for the purpose of punishment [and not] but an incident of some other legitimate governmental purpose." Bell v. Wolfish, 441 U.S. 520, 538 (1979). No express intent to punish by Defendant has been alleged or offered in evidence by the Plaintiff in this case.[2] Additionally, failing to assist Plaintiff in using the holding cell's toilet for two hours may have been for the legitimate purpose of maintaining security and management of a holding cell and thus escape condemnation under Bell.[3]

---

[2] Finding an express intent to punish is determinative of a Fourteenth Amendment violation under the Third Circuit's interpretation of the Bell precedent. Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir. 2007). Failing such a proof, the Court will then turn to the requirement under Bell of determining "when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose." Stevenson, 495 F.3d at 68.

[3] The Third Circuit has urged an examination of "totality of the circumstances within [the] institution" when evaluating the punitive nature of the conditions of confinement. Hubbard v. Taylor, 399 F.3d 150, 160 (3d Cir. 2005) aff'd after remand 538 F.3d 229 (3d Cir. 2008). In applying Bell, this district has required that the deprivation of a detainee's liberty be fairly severe in order to find a constitutional violation. See, e.g., Moriarty v. Ocean County Jail, 2006 WL

Regardless, the Court need not make this determination as Plaintiff fails to establish any involvement in the alleged misconduct by Defendant James McGettigan either through his personal involvement or in his official capacity.

### 1. Defendant's Personal Liability to Plaintiff

Plaintiff admits in his deposition testimony that Defendant James McGettigan did not personally deny him the ability to use the bathroom in the holding cell. (Pl.'s Dep. at 26.) Plaintiff further admits that he has never met the Defendant and that he has only ever seen the Defendant on television. (Pl.'s Dep. at 26.) Plaintiff specifically targets Defendant in this case as the supervisor in charge of the officers who he believes wronged him. (Pl. Resp. at 7.) ("[Defendant] might not be the one who [told the guard] to hurt the plaintiff but he is his boss he bears responsibility for his acts.") Therefore Plaintiff makes no showing of a personal direction by Defendant that would result in Plaintiff's injuries.

Additionally Plaintiff makes no evidentiary showing of actual knowledge by Defendant nor any showing of acquiesence by Defendant in Plaintiff's alleged treatment at the hand of officers of the Atlantic County Sheriff's Office ("ACSO"). In his deposition testimony, Plaintiff admitted that he was unsure

---

2865326 (D.N.J. 2006) (unpublished) (ruling that a pretrial detainee forced to sleep and eat on the floor as well as share a single toilet with 20 other inmates did not rise to a violation of constitutional magnitude).

that the person on the other end of the intercom was an ACSO officer. (Pl.'s Dep. 31-32.) Plaintiff in his complaint and subsequent pleadings also offers no evidence of any contact between the person on the other end of the intercom and the Defendant; which conduct might indicate Defendant's knowledge of or acquiescence in the actions of the person on the other end of the intercom. Absent any such particularly, it is impossible that a reasonable jury could find that Defendant James McGettigan was personally responsible for Plaintiff's injuries. As such, Plaintiff's claim against Defendant McGettigan for personal involvement in a violation of Plaintiff's due process rights will not survive summary judgment.

### 2. Defendant's Official Liability to Plaintiff

Alternative to Plaintiff's claim for personal liability, Defendant might be made to stand liable in his official capacity as Sheriff of Atlantic County if Plaintiff can show evidence that the ACSO was "a 'moving force' behind the deprivation" and has promulgated "a 'policy or custom' [that] played a part in the violation of federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985). This is so because the alleged violations of Plaintiff's due process rights in this case were committed by officers (and thus agents of) the ACSO of which Defendant is the head.

Noting the Third Circuit's ruling in Natale, to find the Defendant liable in his official capacity as Sheriff of Atlantic

County this Court must determine if one of the three situations for finding action in accordance with a policy or custom has occurred.  Natale v. Camden County Correctional Facility, 318 F.3d 575, 584 (3d Cir. 2003).  Those three situations arise when, as stated above: (i) "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy", or (ii) "no rule has been announced as policy but federal law has been violated by the policymaker itself", or (iii) "the policymaker has failed to act at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" Id.

In this case Plaintiff has provided no evidence that Defendant, as policymaker of the ACSO, has promulgated any policy about assistance of pre-trial detainees in using the toilet. Plaintiff in all of his pleadings and deposition testimony has provided no generally applicable statement of policy promulgated by the Defendant or even any allegation that his two-hour wait for assistance to use the toilet was simply the implementation of a general policy about assisting detainees in using the toilet. Absent any such evidence or allegations, the Court cannot find

that the actions of the officers on the intercom resulted from a policy from Defendant McGettigan or the ACSO.

Plaintiff has also not alleged that Defendant McGettigan or the ACSO itself violated any federal law. Plaintiff does allege that the actions of the officers at the court holding cell violated his due process rights, but he specifically does not allege any violation of federal law by Defendant in his role as policymaker for the ACSO. Additionally, outside of his allegations against the officers for a violation of his constitutional rights, Plaintiff offers no evidence whatsoever that the ACSO as a whole violated any federal law.

As such, the only possible ground for liability upon which the Plaintiff stands is "deliberate indifference" by Defendant as policymaker for the ACSO. The Supreme Court has indicated that "deliberate indifference" in this context is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Board of County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 410 (1997). In examining this standard, the Court must determine whether Plaintiff has produced evidence that the need to control the agents of the ACSO was so obvious and the likelihood of violation of constitutional rights was so high that the policymaker can reasonably be said to have been deliberately indifferent to that need. See Natale 318 F.3d at 585 (finding

12

deliberate indifference when no policy existed in a prison to address medication needs of inmates within 72 hours of incarceration). The Third Circuit has typically required plaintiffs in such cases to provide "proof of a pattern of underlying constitutional violations" as a way of showing obviousness of the need for control and thus deliberate indifference on the part of the policymaker. Carswell v. Borough of Homestead, 381 F.3d 235, 244 (3d Cir. 2004).

In this case the Plaintiff alleges no action or pattern of actions by the ACSO officers that rises to the level that might trigger protection under the Fourteenth Amendment. The Plaintiff does not contest that the toilet in the cell was working, he simply asserts that it was missing toilet paper. Plaintiff does make the claim that he was unable to use the bathroom due to the shackles and handcuffs that he was wearing, but only for two hours. This wait, while no doubt uncomfortable and unfortunate, does not rise to the level of a pattern of misconduct that would give rise to a violation of constitutional rights.

Additionally, Plaintiff makes no claim that the officers exhibited a pattern of ignoring pretrial detainees who wanted to use the toilet in the cell and required assistance. Plaintiff does not cite a single other case of officers ignoring the requests of detainees to use the toilet in the holding cell. In fact, other than the statement of Plaintiff, the only direct

evidence presented by either side bearing on the lack of assistance to Plaintiff consists of affidavits of ACSO officers on duty at the time, none of whom recall the alleged incident. (Br. in Supp. of Def.'s Mot. for Summ. J. Ex. B.)  Plaintiff thus does not show that the obviousness and likelihood of a constitutional violation were high in this situation or that Defendant should have known about a risk to Plaintiff's constitutional rights.  Absent actual knowledge by Defendant of the actions of officers or that he even reasonably should have known that those actions posed a risk of constitutional harm, Plaintiff does not provide sufficient basis for a finding that Defendant was deliberately indifferent to the deprivation by his officers of a particular human need.

Given this lack of deliberate indifference, the Third Circuit's test in Natale is satisfied and this Court finds that the Defendant was neither personally involved in the actions of the officers alleged by Plaintiff nor is he responsible for those actions in his official capacity as Sheriff of Atlantic County.

This Court thus finds that Defendant is entitled to summary judgment in this case because the Plaintiff relies solely on a doctrine of respondeat superior for liability against this Defendant and such reliance is, as a matter of law, improper for a suit brought under 42 U.S.C. § 1983.

**III. CONCLUSION**

For the reasons explained above, the Court will grant Defendants' motion for summary judgment in its entirety.  The accompanying Order will be entered.


**November 5, 2008**                **s/ Jerome B. Simandle**
Date                                                         JEROME B. SIMANDLE
                                                             United States District Judge